UNITED STATES DISTRICT COURT
IN THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

BOBBY WEST, COYA JACKSON, DIANECHIA
PATTERSON, MICHAEL PERKINS,
FILANDO MARION, JANET F. POWER,
AND DANIEL GREEN                                                                                         PLAINTIFFS

VS.                                                          CIVIL ACTION NO. 3:16CV79-MPM-RP

CITY OF HOLLY SPRINGS, MISSISSIPPI,
KELVIN O. BUCK, Mayor of the
City of Holly Springs, and J
OHN DOES 1-5                                                                                             DEFENDANTS

## ORDER

This cause comes before the court on defendant City of Holly Springs' motions for summary judgment as to plaintiffs' FLSA wage claims. Plaintiffs have responded in opposition to the motions, and this court, having considered the memoranda and submissions of the parties, concludes that they are well taken and should be granted.[1]

On April 30, 2019, this court conducted a hearing on the summary judgment motions relating to plaintiffs' FLSA wage claims in this case. It is quite unusual for this court to conduct such a hearing, since it rules upon the vast majority of summary judgment motions based solely upon the parties' briefing. In explaining its reasons for setting this hearing, this court wrote, in an April 23, 2019 order, that:

> [T]his court wishes to ascertain the extent to which plaintiffs agree with defendant's expert Joseph E. Hines that they were actually *overpaid* in this case. It appears from plaintiffs' briefing that they do not seriously contest Hines' findings in this regard, but they stop short of categorically agreeing with his assertions in this regard.

---

[1] This court has previously noted that it intends to address the retaliation claims asserted by plaintiffs Coya Jackson and Michael Perkins in a separate order. Defendant has not sought summary judgment as to the retaliation claim of plaintiff Bobby West.

1

> This court has determined that its consideration of these issues would be assisted by a hearing in which it can ascertain the true nature of the facts in this regard.
>
> It appears from plaintiffs' briefing that their FLSA claims have now morphed into allegations that they were issued their overtime payments *too late*. This court can discern two problems with this belated claim, namely 1) that it was not asserted in any of the multiple amended complaints in this case and 2) persuasive authority, in the form of the Second Circuit's decision in *Rogers v. City of Troy*, 148 F.3d 52, 55 (2nd Cir. 1998) suggests that the FLSA "prompt payment" provision does not apply in a factual scenario such as this one. In *Rogers*, the Second Circuit held that the prompt payment provision does not apply in cases where an employer changes its pay schedule so long as this change: "(a) is made for a legitimate business purpose; (b) does not result in an unreasonably long delay in payment; (c) is intended to be permanent; and (d) does not result in violation of the substantive minimum wage or overtime provisions of the FLSA." *Id.* at 60. If the record in this case indicates that plaintiffs were, in fact, overpaid in this case, and that they merely incurred brief delays in receiving their overpayments, then this court is inclined to agree with the Second Circuit that this is not the sort of factual scenario which the FLSA was enacted to address. This court concludes that an evidentiary hearing would be helpful in ascertaining the true facts in this regard, and it will therefore use the time previously scheduled before Judge Percy for this purpose.

[Slip op. at 1-2].

At the (very brief) April 23 hearing, plaintiffs' counsel conceded that his clients were, in fact, overpaid in this case, and he likewise confirmed that their FLSA "prompt payment" claim was their sole remaining wage-based claim in this case. This concession resolves what this court had regarded as the heart of this case. This court notes that, at the hearing, plaintiffs' counsel spoke quite approvingly of the report of defendant's expert Hines, who calculated that plaintiffs were overpaid by the following amounts: Daniel Green, $4,796.05; Janet Power, $2,912.36; Michael Perkins, $5,519.85; Filando Marion, $4,222.68; Dianechia Patterson, $721.18; Bobby West, $1,372.47 and Coya Jackson, $2,522.63. Hines found that these overpayments were the result of the City automatically crediting officers an extra six regular payroll hours per pay period. Hines Declaration at ¶ 9. According to Hines, these six hours "[were] not deducted from the total overtime hours that the payroll system automatically compute[d] by designating any hours in excess of 43 as overtime," thus resulting in overpayments. *Id.*

Having ascertained the status of their FLSA wage claims, this court gave plaintiffs an opportunity at the hearing to present any proof regarding their "prompt payment" claims, including by showing exactly how long a delay they might each have incurred in receiving their (over)payments. Plaintiffs offered no evidence on this issue, and their counsel indicated that it was "difficult to ascertain" from the record exactly how long these delays might have been. Counsel appeared to believe that many of these delays might have merely involved payments being carried over to the next two-week pay period, but he indicated that some of the other delays may have been longer. However, counsel provided no specific evidence in support of this view. At the hearing, plaintiffs' counsel did not request an opportunity to amend his complaint to assert a "prompt payment" claim, even though, as quoted above, this court had specifically cited the absence of any such claim as a potentially fatal weakness. Likewise, plaintiffs did not seek yet another continuance at the hearing, indeed, they provided no arguments responsive to this court's stated concerns that they had waited too long to assert their "prompt payment" claims.

Plaintiffs' belated unveiling of their "prompt payment" claims seems particularly inexcusable in this case, considering that they base their theory upon calculations performed by Hines which were first produced to them on April 3, 2017. [Doc. #22]. Since that time, plaintiffs have been given two opportunities to amend their complaint, and in neither amended complaint did they indicate that they now conceded their underpayment claims and were instead proceeding under a "prompt payment" theory. True enough, there is certain language in the Third Amended Complaint which takes issue with their payments being "rolled over" into subsequent weeks, [Third Amended Complaint at 11] but this court does not regard this vague language as, by any means, clearly setting forth the "prompt payment" claim which plaintiffs

3

eventually raised in response to the summary judgment motion. Indeed, even in their summary judgment briefing, plaintiffs merely argue that the practice of rolling over hours to a subsequent pay period "appears to" violate the FLSA's prompt payment requirement. [Jackson brief at 16]. This is hardly a ringing assertion of an FLSA violation, quite apart from the late date at which it was raised.

This court notes that plaintiffs' original complaint filed in 2016 included this very same language about the "rolling over" of payments, [Complaint at 6], well before the disclosure of Hines' expert report which serves as the basis for their "prompt payment" claims. This suggests to this court that even plaintiffs themselves did not subjectively have a "prompt payment" claim in mind when they included this language. To the contrary, it appears that this language simply describes the City's pay policy which, as discussed below, served to move municipal employees to a bi-monthly pay schedule. Moreover, plaintiffs' initial discovery disclosures, in which they set forth the damages which they claimed, merely make reference to alleged *underpayments*, which they now concede did not occur. For example, plaintiff Michael West, in listing "any category of damages" he claimed, asserted as follows in his initial disclosures:

> Bobby West: Total of overtime hours worked for which he was not compensated from August 2014-August 2016 (actually only compensated for 47 overtime hours during said period) was 613 hours at time and a half rate ($23.82) equals $16,102.32 total compensation due.

[Docket entry 120, exhibit 5, pages 7-8]. Once again, plaintiffs were required to inform defendant of "any category" of damages they claimed, and it would have been a simple matter for them to assert that, in addition to their alleged underpayments, certain payments they did receive were improperly delayed. No such language is present, however.

In the court's view, it is appropriate to review the vague language in plaintiffs' complaint in conjunction with their initial disclosures, to determine whether they provided defendant with

4

fair notice of any "prompt payment" claim. Indeed, a primary purpose of such initial disclosures is to flesh out any unclear allegations in the complaint, so that the defendant can know exactly what sort of claims and damages the plaintiffs are asserting. In their initial disclosures, each of the plaintiffs claimed thousands of dollars (and often tens of thousands of dollars) in alleged underpayments, even though plaintiffs' counsel conceded at the April 30 hearing that he no longer alleged that they suffered *any* actual damages. Plaintiffs' FLSA wage claims thus strike this court as being ones which simply collapsed under the scrutiny of the discovery process, and, it appears that, recognizing this fact, plaintiffs attempted to shift gears and assert an entirely new theory of liability in response to defendant's summary judgment motions. This is clearly improper.

In light of the foregoing, this court concludes that plaintiffs failed to provide defendants with fair notice of their "prompt payment" claim before raising it in response to the summary judgment motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 698–99, 129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009)(holding that"[a] properly pleaded complaint must give fair notice of what the claim is and the grounds upon which it rests."). It seems clear that a basic theory of the case is not something to be "hidden" from the other side, since litigation is not a game of hide and seek. Thus, even if there is an argument that certain language in the Third Amended Complaint is sufficiently broad to encompass a "prompt payment" claim, that does not mean that plaintiffs were justified in allowing defendants to litigate this case under a reasonable assumption that they maintained one theory of the case, only to unveil a different theory in response to a summary judgment motion.

It seems clear from defendant's summary judgment briefing that it was under the impression that it merely had to address allegations that plaintiffs had not been paid sufficient

5

overtime under the FLSA. Defendant's entire briefing and trial preparation had been devoted to rebutting this theory of the case, which, of course, represents the "typical" FLSA case. For this reason, this court shared defendant's surprise when, in response to its summary judgment briefing, plaintiffs responded with what appeared to be an entirely different theory of liability. To be certain, there is precedent supporting such a "prompt payment" claim, and defendant does not dispute this fact. *See, e.g. Singer v. City of Waco, Tex.*, 324 F.3d 813, 828 (5th Cir. 2003)(holding that "an employer violates the FLSA not only by failing to pay overtime compensation but also by delaying the payment of overtime compensation."). While thus recognizing that a "prompt payment" claim is generally available in the Fifth Circuit and elsewhere, defendant argues that this case in an exceptional one more analogous to *Rogers v. City of Troy*, 148 F.3d 52, 55 (2nd Cir. 1998), which this court discussed in its prior order.

In *Rogers*, the Second Circuit held that the FLSA's prompt payment provision does not apply in cases where an employer changes its pay schedule so long as this change: "(a) is made for a legitimate business purpose; (b) does not result in an unreasonably long delay in payment; (c) is intended to be permanent; and (d) does not result in violation of the substantive minimum wage or overtime provisions of the FLSA." *Rogers*, 148 F.3d at 60. This court agrees with defendant that *Rogers* bears a strong factual resemblance to this case, since each case involved a municipality enacting a new, permanent, payment procedure applicable to all employees which clearly had neither the intent nor the effect of depriving anyone of overtime payments.

In its brief, the City describes the new policy which it enacted as follows:

In July 2013, Kelvin O. Buck ("Mayor Buck") took office as Mayor of the City of Holly Springs ("City"). At that time, there were different pay periods for different city employees (i.e., some city employees were paid monthly, bi-weekly, or every two weeks). *Id*. at 7–8. In particular, the Holly Springs Police Department ("Department") was being paid every two weeks. *Id*. at 8. In August 2014, in an effort to conform all pay periods to the same period, Mayor Buck, with the approval of the Board of Aldermen,

6

instituted a new pay policy whereby all city employees would be paid on the same days – the 1st and 15th of each month.

[Defendant's brief at 2].  It seems clear that the City's conversion to the new payment system was far from a model of efficiency, as evidenced by the widespread overpayments, which were presumably not intentional.  Nevertheless, plaintiffs concede that, at the end of the day, they were, in fact, overpaid by rather large amounts, and, that being the case, this court believes that applying the FLSA's prompt payment requirement would be rather illogical in this case.

This court concludes that, at some point, common sense must enter the picture in this context.  This court is reluctant to permit the rather absurd result of having plaintiffs, with pockets bulging from thousands of dollars in salary overpayments, go before a jury and seek additional amounts for what appear to be very minor delays in receiving large financial windfalls.[2]  *Rogers* illustrates, correctly in this court's view, that there are exceptional cases where applying the FLSA's "prompt payment" requirement would be illogical, and indeed absurd, and this court believes that this is one such case.  Regardless, it seems clear that this court need not even reach the issue of *Rogers*' applicability if it determines that plaintiffs failed to timely and properly raise a "prompt payment" FLSA claim in this case.  For the reasons discussed above, this court concludes that plaintiffs did, in fact, fail to properly raise such a claim, regardless of *Rogers*' applicability.  Moreover, while requests to amend complaints are, generally-speaking, to be liberally granted, plaintiffs have, once again, made no such request to file a Fourth Amended complaint.  It is unclear to this court whether this was tantamount to a concession of this issue by plaintiffs, but, at any rate, the record on this point is clear.

---

[2] Once again, counsel for plaintiffs was quite vague and uncertain regarding how long the delays may have been, but it appears to this court that most of them were quite minor, often only until the next bi-monthly pay period.

7

That brings this court to another reason for dismissing plaintiffs' "prompt payment" claims, namely because they have not developed sufficient facts in support of such a claim. Indeed, even if plaintiffs had requested an opportunity to file yet another amended complaint, and even if this court had granted that request, it was abundantly clear from the April 30 hearing that their proof on this issue is nowhere close to being ready for trial. Once again, this court specifically asked counsel to clarify exactly how long each plaintiff might have seen his payments (or, more specifically, overpayments) delayed, and he could only offer that it was "difficult to ascertain" this fact. If plaintiffs' counsel is unable to ascertain this fact at a hearing held specifically for this purpose, then how does he expect the jury to do so at trial?

At the hearing, counsel for plaintiffs admitted that it would be "conjecture" to try to establish how long each plaintiff saw his claims delayed, and this certainly appears to be accurate. Counsel appeared to cast blame on defendant for its record-keeping in this context, but this court does not believe that plaintiffs are in a position to cast blame in this regard. In the court's view, since plaintiffs failed to properly prosecute their "prompt payment" claims, they should not be allowed to complain about the scarcity of proof on this issue. Moreover, this court does not believe that, given the history of this case, plaintiffs should be allowed to potentially benefit from a jury's verdict based on conjecture and incomplete information. When this court requires a jury to resolve an issue which even plaintiffs concede involves a great deal of conjecture, it essentially creates a lottery which is very likely to produce unreliable results. In the court's view, plaintiffs should not be allowed to potentially benefit from such a lottery, particularly when they concede that they have already been overpaid for the work they performed.

This court is aware that, ordinarily, if a plaintiff has created fact issues regarding whether he suffered some damages, then a claim will not fail for a lack of proof regarding the exact amount of those damages. This is not an "ordinary" case, however. This is a case in which, after three years of litigation, the sole claim raised by plaintiffs was a "prompt payment" claim which they never plainly asserted in a complaint, which they failed to properly prosecute during the pleading and discovery phases of the case, and which they first unveiled in a response to a summary judgment motion mere weeks ago. Moreover, when this court took the unusual step of conducting a special hearing to ascertain the extent of plaintiffs' proof regarding this claim, they had no proof whatsoever to offer.

Under these circumstances, this court can only conclude that plaintiffs failed to properly prosecute their "prompt payment" claims in this case, even assuming that the Fifth Circuit would disagree with *Rogers* or find it distinguishable from this case. Nevertheless, this court reiterates, for the record, its view that *Rogers*' rationale fully applies to defendant's decision, for legitimate business reasons, to move to a bimonthly, permanent payment system for all its employees which clearly did not "result in violation of the substantive minimum wage or overtime provisions of the FLSA." *Id.* Indeed, this court believes that, if municipalities made it known that employees could receive thousands of dollars in salary overpayments, and that they need only incur minor (or even moderate) delays for that to occur, then workers would be lined up around the block to accept this offer.

It seems clear that plaintiffs received what the vast majority of workers would regard as a financial windfall, and this court can discern no good reason why they should be allowed to obtain "compensation" under these circumstances. It appears that the only arguable fact issue regarding the four *Rogers* factors, discussed above, is whether the new system "resulted in an

9

unreasonably long delay in payment." Once again, however, plaintiffs may not reasonably blame defendant for their lack of proof on this issue, when they had two years following Hines' report to develop their proof on it and yet failed to do so. Given the state of the record in this case, this court believes that it would be doing a dis-service to the integrity of judicial process by going forward with a trial regarding matters as to which so little actual proof exists.

Weaknesses in plaintiffs' proof aside, this court believes that, in an FLSA case, the fact that defendant ultimately overpaid plaintiffs by a very substantial amount must factor heavily into determining whether any delays in payment were "unreasonable" under the *Rogers* analysis. Indeed, even if it could be fairly said that Holly Springs' implementation of its salary system was something of a well-intentioned fiasco which resulted in some delays, the fact remains that, when the dust settled, the City erred quite heavily on the side of its employees in determining the amount of compensation they were due. That has to count for something, in this court's mind. This court wishes to avoid a scenario where "no good deed goes unpunished," and it appears that forcing defendant to incur the expense of a trial at which it defends the manner in which it overpaid plaintiffs would appear to be just such an unjust result. This unusual overpayment scenario is one which was not even present in *Rogers*, and this court believes that the undisputed fact that plaintiffs were overpaid makes any argument that defendant acted unreasonably under the FLSA to be highly suspect, at best.

As noted previously, plaintiffs have sought neither an opportunity to amend nor a continuance, but this court notes for the record that it would have been unlikely to grant such requests even if they had been made. This court has already continued this case multiple times at plaintiffs' request, and any additional continuance would push it beyond the three-year time limitation set forth in the Civil Justice Reform Act. While not a strict bar, the three-year

limitation in the CJRA is one which this court takes very seriously, and it sees no good reason for plaintiffs' failure to raise their "prompt payment" claims at a much earlier date. Therefore, this case is clearly not an exceptional one in which an extension beyond the three-year CJRA period might be justified. In light of the foregoing, this court concludes that time has run out on this case, and that, due to plaintiffs' failure to properly raise or prosecute their "prompt payment" claims, those claims are in no condition to go before a jury. Defendants' motion for summary judgment as to plaintiffs' FLSA wage claims will therefore be granted.

It is therefore ordered that defendant's motions [110-1, 112-1, 114-1, 118-1, 120-1] for summary judgment as to the FLSA wage claims of Daniel Green, Dianechia Patterson, Janet Power, Filando Marion and Bobby West are granted.[3] Defendant's motions [116-1, 122-1] for summary judgment as to the claims of Coya Jackson and Michael Perkins are granted in part, as to their FLSA wage claims, and this court will address their summary judgment arguments as to the FLSA retaliation claims of these plaintiffs in a future order.

This, the 3rd day of May, 2019.

/s/ Michael P. Mills
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

---

[3] Defendant only seeks partial summary judgment as to West's FLSA wage claim, apparently conceding that triable fact issues exist at to his FLSA retaliation claim.

11