UNITED STATES DISTRICT COURT
IN THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

BOBBY WEST, COYA JACKSON, DIANECHIA
PATTERSON, MICHAEL PERKINS,
FILANDO MARION, JANET F. POWER,
AND DANIEL GREEN                                                              PLAINTIFFS

VS.                                              CIVIL ACTION NO. 3:16CV79-MPM-RP

CITY OF HOLLY SPRINGS, MISSISSIPPI,
KELVIN O. BUCK, Mayor of the
City of Holly Springs, and JOHN DOES 1-5                                    DEFENDANTS

## ORDER

This cause comes before the court on defendant City of Holly Springs' motions for summary judgment as to the FLSA retaliation claims asserted by plaintiffs Michael Perkins and Coya Jackson, as well as certain other claims which remain outstanding in this case. Plaintiffs have responded in opposition to the motions, and this court, having considered the memoranda and submissions of the parties, is prepared to rule.

In its prior order dismissing the FLSA wage claims asserted by each of the plaintiffs in this case, this court noted that it would address the retaliation claims asserted by Perkins and Jackson in a separate order. As discussed below, this court concludes that triable fact issues exist regarding the retaliation claims asserted by each of these plaintiffs. Before discussing the facts relevant to their claims, this court will make some observations applicable to them both. In its briefing, defendant makes certain concessions as to Perkins' and Jackson's retaliation claims which serve to significantly limit the scope of this court's inquiry on summary judgment. Specifically, defendant concedes that each of these plaintiffs engaged in protected activity under

1

the FLSA, and it further concedes that they each received certain punishments which constitute adverse employment actions.

In light of defendants' concessions, the sole issue for this court's resolution comes down to the issue of *motive*, in particular whether the adverse employment actions in this case were intended to punish plaintiffs for filing this lawsuit. It should be apparent, however, that the issue of what motivated a particular party to take a particular action is not one which lends itself easily to resolution on summary judgment. Indeed, the issue of motive is one which often comes down to evaluations regarding the credibility of witnesses, and this is a task which juries are uniquely well suited to perform. Moreover, the fact that this court agreed with defendant that it did not violate the FLSA's wage provisions is quite irrelevant for the purposes of plaintiffs' retaliation claims. In this court's experience, rather weak cases of discrimination often give rise to potentially strong claims of retaliation, since many employers react quite negatively to being accused of something that they did not do. As discussed in this court's prior order, plaintiffs now concede that they were actually *overpaid* in this case, and, under these circumstances, it would, perhaps, be understandable if defendant felt that the filing of this lawsuit evidences a certain lack of gratitude on their part.

However understandable any offense felt by defendant over this lawsuit might have been, this does not render any acts of retaliation resulting from that offense any more lawful. Under the FLSA, the proper forum for resolving any meritless claims is in court, and it is clearly unlawful for an employer to allow any anger it might feel over a lawsuit to result in acts of retaliation. That brings this court to another fact supporting plaintiffs' retaliation claims, namely the surprisingly high rate at which the plaintiffs in this case incurred acts of alleged retaliation. It is undisputed that three of the seven FLSA plaintiffs in this case sustained "materially adverse"

actions after the filing of this lawsuit, and this strikes this court as representing a quite high rate of such actions.

It should be emphasized that defendant has not even sought summary judgment as to the retaliation claims asserted by plaintiff Michael West, who, the complaint alleges, was demoted from detective to patrolman without explanation, lost the use of a take-home vehicle available only to detectives, and was advised that he should resign shortly after filing this lawsuit. [Third Amended Complaint at 8]. By not seeking summary judgment as to West's retaliation claims, defendant tacitly concedes that triable jury issues exist regarding whether retaliation for filing this lawsuit was the "but for" cause of his termination. If a jury were to conclude that defendant had a retaliatory mindset against West based on his filing of this lawsuit, then it would, in all likelihood, be more willing to accept that it had a similar mindset *vis a vis* his co-plaintiffs Perkins and Jackson. Thus, while the claims asserted by West are not directly discussed in this order, this court believes that they offer indirect support for the claims asserted by his co-plaintiffs.

With the foregoing considerations in mind, this court now turns to the law applicable to the retaliation claims asserted by Jackson and Perkins. The anti-retaliation provision of the FLSA makes it unlawful "to discharge or…discriminate against any employee because such employee has filed any complaint." 29 U.S.C. § 215(a)(3). A retaliation claim under the FLSA is subject to the *McDonnell Douglas* burden-shifting framework. *Lasater v. Tex. A&M Univ. Commerce*, 495 Fed. Appx. 458, 461 (5th Cir. 2012). To establish a prima facie retaliation claim under the FLSA, a plaintiff must make a showing of: (1) participation in a protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action." *Id*.

If the plaintiff is successful in making this prima facie showing, then the defendant must articulate a legitimate, nonretaliatory reason for the adverse employment action. *Id*. After the defendant presents a legitimate nonretaliatory reason for the adverse employment action, the burden shifts back to the plaintiff to show that the defendants' proffered reason is pretextual. *Id*. As it relates to the final burden, the U.S. Supreme Court has held that in retaliation cases, the employee must prove that the "adverse employment action would not have occurred 'but for' plaintiff's protected activity." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 340 (2013).

With the foregoing authority in mind, this court considers first defendant's summary judgment motion as to plaintiff Cora Jackson's retaliation claim. This claim, and Jackson's related state-law claim for malicious prosecution, is based on his 2017 prosecution for disturbing the peace. This criminal charge arose out of a July 27, 2017, incident in which Jackson went to City Hall to demand his last paycheck after he accepted a job at a different law enforcement agency. In its brief, defendant describes the facts surrounding this prosecution as follows:

> Jackson left the Department in the summer of 2017 to work for the Marshall County Sheriff's Department. On July 21st, Jackson went to City Hall to pick up his final paycheck, which contained any vacation and sick time he accumulated while with the Department. Although Jones was in plain clothes, he had his Glock .40 on his side when he entered City Hall. Jones informed Jackson that she could not process his paycheck because it first had to be approved by Chief Harris, who was out of town at the time. However, Jackson insisted that Jones call Chief Harris and have him approve it over the telephone. He also suggested that she look in the system to see how much he was owed, but she again informed him that she would need Chief Harris' approval. Jones went and spoke with her supervisor, Belinda. Upon her return, Jones tried to explain to Jackson again that because Chief Harris was out of town she could not process his paycheck. Jackson told Jones that her refusal to give him his check was "unacceptable."
> At some point, Captain Bowens showed up and asked Jackson to leave because he was disturbing the peace. Captain Bowens also informed Jackson that he would be arrested if he did not leave. Jackson responded "who's going to arrest me." Shortly afterwards, Mayor Buck came out and informed Jackson that he would get his paycheck when Chief Harris returned. Mayor Buck also asked Jackson to leave. However, Jackson told them that he was not going anywhere until he received an explanation about his paycheck. Jackson then called his Commander at Marshall County, Gary Byrd, and told

4

him they were refusing to give him his paycheck and that they were going to arrest him if he did not leave. It was not until Byrd instructed Jackson to leave that he left City Hall.

On July 21, 2017, Mayor Buck wrote a letter to the Department about the incident and asked them to charge Jackson with the appropriate legal charge. Captain Bowens filed an affidavit seeking a charge against Jackson for disturbance in a public place. The charge was initially filed in Municipal Court, but transferred was to Circuit Court. * * * The Circuit Court ultimately dismissed the charge at the probable cause hearing.

[Defendant's brief at 3-5 (record citations omitted)].

For his part, plaintiff asserts in his brief that:

Jackson testified that during the incident, he did not raise his voice, nor was he belligerent to either Captain Bower or Ms. Jones. Jackson never refused to leave the premises and left after being asked to do so by Captain Bowen. It was later discovered that Jackson's paycheck had previously been processed and was ready for pickup at the time Jackson arrived at City Hall. It was Jackson's belief that he was not allowed to retrieve the check at the direction of Mayor Buck.

[Plaintiff's brief at 8 (record citations omitted)].

It is thus apparent that there are significant differences in the parties' accounts of the July 2017 incident, but, at this juncture, this court is required to consider the facts in the light most favorable to plaintiff, as the non-moving party. This deferential standard aside, this court is of the view that Jackson's position is assisted by defendant's acknowledgement that Mayor Buck asked that he be prosecuted. In the court's view, a jury might well wonder why the mayor, and not the city prosecutor, was making such a recommendation, which would appear to fall outside of the normal scope of a mayor's responsibilities. Moreover, this court believes that the circumstances under which the recommendation was made might also lead a jury to infer a retaliatory motive.

Considering the facts in the light most favorable to plaintiff, jurors may regard it as particularly unusual that Mayor Buck was instrumental in bringing about charges of disturbing the peace against Jackson, well after the incident in question was over, after tempers had cooled, and after the officers on the scene, who were charged with actually keeping the peace, had

5

concluded that no arrest was necessary. These considerations, and the undisputed fact that the Circuit Judge dismissed the charge at a probable cause hearing, may lead a jury to conclude that such a charge of disturbing the peace was not a reasonable response to plaintiff's actions. Moreover, if the jury agrees with plaintiff's contention that Mayor Buck ordered that his paycheck be held, even though it had already been processed, then it might well agree that his motivation for this action was anger over the lawsuit which had been filed against him and the City.

In sum, this court concludes that triable fact issues regarding whether Jackson's prosecution constituted an unlawful act of retaliation under the FLSA, and defendants' motion for summary judgment will therefore be denied as to his retaliation claim. This court likewise concludes that triable fact issues exist regarding plaintiff's state law claim for malicious prosecution. To establish a claim for malicious prosecution under Mississippi law, a plaintiff must demonstrate: (1) the institution or continuation of original judicial proceedings, either criminal or civil; (2) by, or at the instance of the defendants; (3) the termination of such proceeding in plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceedings; and (6) the suffering of damages as a result of the action or prosecution complained of. *Alpha Gulf Coast, Inc.v. Jackson*, 801 So. 2d 709, 721 (Miss. 2001).

As with plaintiff's retaliation claims, defendant concedes most of the elements of Jackson's malicious prosecution claim, but it argues that plaintiff is unable to demonstrate fact issues regarding the question of malice. This court disagrees. "Malice, in its legal sense, means a wrongful act done intentionally, without just cause or excuse." *Gatheright v. Barbour*, 2017 U.S. Dist. LEXIS 18158, at *39 (N.D. Miss. Feb. 7, 2017) (quoting *Harmon v. Regions Bank*, 961 So.

6

2d 693, 699 (Miss. 2007)). It "is not necessarily personal hate or ill will, but it is the intent, without justification or excuse, to commit a wrongful act." *Id*.; *Strong v. Nicholson*, 580 So. 2d 1288 (Miss. 1991). In malicious prosecution cases, the Mississippi Supreme Court "has defined malice … to be a term that is used in an artificial and legal sense signifying that the prosecution was commenced primarily for a purpose other than that of bringing the accused to justice." *Alpha Gulf Coast*, 801 So. 2d at 722. Malice can be proved by circumstantial evidence. *Id*.

For essentially the same reasons stated in its discussion of the retaliation claim, this court concludes that the circumstances surrounding Mayor Buck's request that plaintiff be prosecuted may lead a jury to conclude that he had a motive other than bringing Jackson to justice. Defendant offers no authority suggesting that an intent to retaliate against someone for filing a lawsuit cannot likewise constitute "malice" under Mississippi law, and this court is unaware of any such authority. This court therefore concludes that defendant's motion to dismiss plaintiff's malicious prosecution claim is not well taken and should be denied. However, Jackson has failed to contest defendant's argument that his false imprisonment claim should be dismissed, and this court will accordingly grant defendant's motion for summary judgment as to this claim.

This court now turns to defendant's motion for summary judgment as to the retaliation claim asserted by plaintiff Michael Perkins. In the court's view, this motion presents closer issues, since it appears that Perkins did commit rather serious errors in performing his duties as a Sergeant in the Holly Springs Police Department, and it does not appear that the punishment he received for committing these errors was, on its face, unreasonable. In its briefing, defendant describes the facts surrounding these errors as follows:

> Around September 2017, the Department began using new Criminal Arrest Warrant forms. Shortly thereafter, Perkins executed three criminal arrest warrants whereby he signed his name on the Municipal Judge's signature line. According to Perkins, he does not know why he signed the forms where the Municipal Judge's signature belongs, but he

7

believes it is because Lieutenant Glover told him to fill out the forms and sign them. As a result, the arrest warrants were later deemed invalid.

On May 15, 2018, after the subject of the invalid warrants was before Judge Amanda Smith and she discovered the improperly issued warrants, Judge Smith wrote a letter to Mayor Buck and the Board of Aldermen pointing out this deficiency, and other deficiencies, with the warrants signed and approved by Perkins. Chief Harris also became aware of the errors with the warrants. Harris Dep. at 56. Judge Smith's letter was considered by the Board of Aldermen and Chief Harris recommended Perkins be given a three-day suspension and that he be removed from the Street Crimes Unit. The Board of Aldermen, however, voted to suspend Perkins five (5) days and remove him from the Street Crimes Unit. Perkins appealed the Board of Aldermen's decision, but the appeal was denied. According to Perkins, the Street Crime Unit has essentially dissolved because he and the other officers were transferred to other positions due to the Department being short-handed.

[Defendant's brief at 4-5 (record citations omitted)]. In his brief, Perkins asserts that his mistake was simply a clerical error, based upon the fact that he was presented with an arrest warrant form which had not previously been used and regarding which he had not been trained. [Perkins' brief at 8]. Regardless, it does appear to this court that Perkins committed a rather serious error in either judgment or competence, and a jury may well conclude that the punishment he received for this error was appropriate.

In the court's view, the primary fact which militates in favor of allowing a jury to resolve these issues lies in the facts that the ultimate punishment which was meted out to Perkins was harsher than his Chief of Police had recommended, and there appears to be considerable uncertainty regarding the reason for this fact. In his deposition, Holly Springs Police Chief Dwight Harris testified that he recommended to Mayor Buck and the Board of Aldermen that Perkins be transferred out of the Street Crimes Unit and suspended for only three days, but that the decision was ultimately made by the Board to increase that punishment to five days. [Harris depo. at 57].

8

Standing alone, the Board of Aldermen's decision to go beyond the punishment Chief Harris had recommended is perhaps unremarkable, but this court does not consider Perkins' allegations of retaliation in a vacuum. As discussed previously, defendant has not even sought summary judgment as to the retaliation claims asserted by one of the plaintiffs in this lawsuit, Michael West, and this court has previously discussed its conclusion that triable fact issues exist regarding the retaliation claims asserted by Jackson. The fact that two of the seven plaintiffs in this case have presented triable jury issues regarding retaliation they allegedly suffered at the hands of the City is one which this court cannot ignore when considering the retaliation claims asserted by a third plaintiff.

This court's conclusion that triable fact issues exist regarding Perkins' claim is also based upon a conclusion that fact issues exist regarding the role Mayor Buck played in his punishment. In its brief, defendant summarizes plaintiff's contentions regarding Buck's role in this regard as follows:

> Perkins' retaliation claim focuses primarily on Mayor Buck. Perkins believes his suspension resulted from Mayor Buck's retaliatory motive and he supports this claim with the following contentions: (1) Mayor Buck asked him to respond to the letter sent by Judge Smith; (2) Mayor Buck and the Board of Aldermen, and not the Department, initiated the disciplinary procedures that led to the adverse actions; (3) the harshness of the punishment; and (4) he was told that Mayor Buck wanted him terminated from the Department. None of these contentions establish a retaliatory motive caused his suspension.
> * * * As to the harshness of the punishment, Chief Harris made the recommendation that Perkins be suspended without pay and removed from the Street Crimes Unit. *Id*. at 57. The ultimate decision was then up to the Board of Aldermen, and not Mayor Buck, and the Board decided on the five-day suspension. Perkins does not have any evidence that the Board of Aldermen were motivated by his FLSA lawsuit.

[Defendant's brief at 11-12].

At trial, this court will be interested in seeing whether plaintiff is able to present any admissible, non-hearsay evidence which establishes that Mayor Buck wanted him fired, rather

9

than suspended. Perkins' deposition testimony fell well short of the mark in this regard, given that he merely testified as follows:

> Q: Officer, I know it's going to put you in an uncomfortable position but I've got to build a - interview other witnesses about your case so I need to know who told you that the Mayor wanted you terminated instead of suspended.
> Perkins: It was told to me in confidence, and I would rather not –
> Q: Was it an Alderman?
> A: I would rather not say. It was told to me in confidence that, you know, he wanted me fired. He recommended me be terminated.

[Perkins depo. at 71].

This court will not allow pure innuendo of this nature to be presented at trial, and it is not basing its summary judgment ruling upon such innuendo. Nevertheless, this court is interested in whether plaintiff will be able to elicit any admissible testimony, such as from a member of the Board of Aldermen, that Mayor Buck wanted him fired.[1] If so, then this court disagrees with defendant's contention that any such desire on the part of Mayor Buck would be irrelevant. In so asserting, defendant writes in its brief that:

> Perkins' focus on Mayor Buck's alleged desire to terminate his employment also is unavailing. Perkins was suspended, not terminated. Assuming Mayor Buck wanted to terminate Perkins' employment, it appears the Board of Aldermen disagreed. In any event, Perkins cannot establish retaliation based on an adverse employment action (termination) he has not even experienced.

[Defendant's brief at 12]. It appears to this court that defendant is rather seriously understating the potential importance of Mayor Buck's desires *vis a vis* the punishment received by plaintiff.

In the court's view, if plaintiff does manage to present admissible evidence that Mayor Buck wanted him fired, then this would buttress his retaliation claims by establishing that the most powerful figure in city government, who is also a named defendant in this lawsuit, made

---

[1] Mayor Buck's own alleged statements would presumably constitute non-hearsay admissions by a party opponent.

10

known his desire that plaintiff be punished harshly. A jury might well conclude that any such desire on the part of Mayor Buck played a prominent role in the Board of Aldermen's decision to exceed the punishment recommended by Chief Harris. Moreover, proof of Buck's involvement in yet another disciplinary proceeding (each time urging harsher punishment) against one of the individuals suing him, might well be seen by a jury as evidence of a pattern of retaliation.

Even disregarding plaintiff's rather coy deposition testimony, there is clearly reason to wonder about the role which Mayor Buck played in the disciplinary proceedings against plaintiff. It is undisputed that it was Buck who first asked Perkins to respond to the allegations levied against him, and it is undisputed that Buck was present at the hearing in which plaintiff unsuccessfully appealed the discipline he received. It thus seems clear that Buck was involved in the early and late stages of the disciplinary proceedings against plaintiff, and it therefore seems fair to wonder whether he also played a role in the Board of Aldermen's decision regarding plaintiff's punishment, and, if so, what that role was. Once again, defendant does not actually deny in its briefing that Buck did, in fact, urge that plaintiff be fired; rather, it argues that any such request would have been irrelevant. This court disagrees, for the reasons previously stated. This court concludes that there are important facts relating to Perkins' claims which have yet to come to light, and it trusts that the parties will inquire in this regard at trial. Even considering solely the admissible summary judgment evidence, however, this court concludes that triable fact issues exist regarding Perkins's retaliation claim, and defendant's motion to dismiss that claim will therefore be denied.

This court similarly concludes that fact issues exist regarding Perkins' state law claim that, when he was promoted to sergeant in February 2013, he was not provided with the pay increase that he was promised by then-Chief Hollowell. In arguing that there was an implied

11

contract between him and the City of Holly Springs, Perkins emphasizes that a promotion typically comes with a $2.00 pay increase, and that while he knew he would not receive an immediate increase in pay, he was told by Hollowell the Board was trying to find the money and that he would eventually get paid. *Perkins Response* at 22–23; *see Perkins Dep.* at 11–13, 22.

Perkins argues that Chief Holloway's representations, along with the city's established promotion pay policy, created an implied contract with the City. The elements of a valid contract are: "(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *Hinds Cty. Econ. Dev. Dist. v. W & G Props., LLC*, 203 So. 3d 49, 52 (Miss. App. 2016). The distinction between an express and implied contract involves "no difference in legal effect," but merely in the mode of manifesting assent, such as words or other conduct. *Weible v. Univ. of S. Miss.*, 89 So. 3d 51, 60 (Miss. App. 2011). Just as with any other contract, for there to be an implied contract there must be a meeting of the minds. *Id.*

In contending that plaintiff's implied contract claim should be dismissed, defendant argues that:

> Chief Hollowell's alleged promise that the Board was trying to find money and Perkins would get paid hardly constitutes a valid contract, as the agreement was not sufficiently definite and Hollowell did not have the authority to make such agreement on behalf of Defendants. As acknowledged by Perkins, the Board of Aldermen, not Chief Hollowell, approves pay increases. At no point does Perkins contend Defendants agreed to give him a pay increase for the rank promotion and there is no evidence establishing the amount of any promised pay raise. As such, a valid contract, implied or otherwise, does not exist between Perkins and Defendants. At most, Perkins accepted his promotion with the mere hope he would get a pay increase in the future.

[Defendant's brief at 12 (record citations omitted)].

In the court's view, a jury may ultimately decide that Chief Holloway lacked the authority to bind the City regarding this matter, or that his representations in this regard were not definite enough to give rise to liability. Ultimately, however, this court concludes that jurors, and not this court, should resolve this issue. In so stating, this court notes that it is not merely Holloway's words, but established city practice, which led plaintiff to believe that the greater responsibilities of being sergeant would be accompanied by a corresponding increase in salary. Indeed, Chief Harris testified that he could not recall an instance in which an officer had received an increase in rank and not received a corresponding increase in pay. [Harris depo. at 26]. Moreover, on a very basic level, this court believes that this practice corresponds to what most individuals would assume regarding a clear advancement in rank, such as a promotion to sergeant. That being the case, a jury may conclude that Chief Holloway's representation to Perkins was not a case of him "going out on a limb" to promise something that he lacked authority to deliver, but merely a description of established City policy as it relates to an individual in plaintiff's position. If a jury so concludes, then it may well decide that Perkins' implied contract claim has merit.

In its reply brief, defendant argues, for the first time, that Mississippi's three-year statute of limitations set forth in Miss. Code Ann. § 15-1-49 bars Perkins' breach of contract claim. [Reply brief at 11]. In the court's view, defendant should have raised his argument in its initial summary judgment brief so that Perkins would have had an opportunity to address it in his response. This court will address this issue, if necessary, at the directed verdict and/or jury instruction phase of trial, but it appears at this juncture that the three-year statute of limitations

would constitute, at most, a partial defense.[2] In its reply brief, defendant notes that Perkins received his promotion in February 2013 and that it was not until December 5, 2017 that he amended his original complaint to include his promotion pay claim. [Reply brief at 11]. While these facts may well require that the jury be instructed to only consider Perkins' claim for lost promotion pay which accrued after December 5, 2014, the fact remains that he has continued to work for the city as a police sergeant after that day. This court is therefore unable to conclude, at least at this juncture, that the three-year statute of limitations provides a complete defense to Perkins' promotion claim.

In light of the foregoing, this court concludes that triable fact issues exist regarding Perkins' implied contract claim in this case. The parties have submitted virtually identical arguments regarding plaintiff Filando Marion's claim for promotion pay, and this court concludes that defendant's summary judgment motion should likewise be denied as to that claim. In the pretrial order, the parties correctly recognized that this court's order dismissing Marion's FLSA wage claims did not address his state law promotion pay claim and that this claim remained outstanding. Barring sufficiently persuasive arguments from defendant at the directed verdict stage of trial, this court will allow a jury to resolve the unsettled fact issues relating to the promotion pay claims asserted by each of these plaintiffs.

It is therefore ordered that defendant's motions for summary judgment as to the FLSA retaliations claims asserted by plaintiffs Jackson and Perkins are denied, and its motion for summary judgment as to the promotion pay claims asserted by plaintiffs Perkins and Marion are likewise denied. Defendant's motion for summary judgment as to the malicious prosecution

---

[2] Defendant also argues that plaintiff's implied contract theory was not plead sufficiently in the amended complaint, but this court regards the nature of this claim (which is hardly complex) to be clear enough from the complaint.

claim asserted by Jackson is denied, but its motion for summary judgment as to the false imprisonment claim asserted by Jackson is granted.

This, the 28th day of May, 2019.

/s/ **MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**